UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| DONALD BROWN | CIVIL ACTION NO. 04-1512-P |
| versus | JUDGE STAGG |
| WARDEN | MAGISTRATE JUDGE HORNSBY |

_____

## REPORT AND RECOMMENDATION

**Introduction**

After a bench trial in Desoto Parish, Donald Brown ("Petitioner") was convicted of manslaughter. Petitioner pursued a direct appeal and challenged the sufficiency of the evidence to support his conviction. The State appellate court reversed the conviction, with one judge dissenting. State v. Brown, 825 So.2d 596 (La. App. 2 Cir. 2002). The Supreme Court of Louisiana reinstated the conviction in a unanimous opinion. State v. Brown, 846 So.2d 715 (La. 2003). Petitioner then filed this action seeking federal habeas relief on the grounds that the State failed to prove his guilt beyond a reasonable doubt and that the Supreme Court's decision was manifest error. These grounds are essentially the same and will be considered together. It is recommended, for the reasons that follow, that the petition be denied.

**Background Facts**

Kathryn "Sue Mama" Rankin ("Rankin") was found dead at approximately 11:00 a.m. on April 7, 1999. Her body was found face-down on a wooded trail that was used as a

shortcut to the housing projects in Mansfield, Louisiana. The trail had recently been covered by a few inches of water due to rain. Rankin's body was nude except for her socks, and she had alcohol and cocaine in her system. The autopsy report indicates that her body had numerous bruises, scratches, and blunt force injuries as well as signs of anal penetration, strangulation, and drowning.

Rankin was last seen alive on the night of April 5 and early morning hours of April 6, 1999. That night, Rankin had sex with Harold Anderson in exchange for $20 in the house shared by Harold Anderson and his brother Hewitt. Hewitt Anderson testified that Rankin left their home at approximately midnight to 12:30 a.m., but he was uncertain of the time because he did not have a clock.

Rankin was also seen on the night of her death by Garrison Simpson. Simpson testified that on the night of April 5, 1999, he left his girlfriend's house at approximately 11:00 p.m. and drove to a point approximately 50 yards from where Rankin's body was later discovered. As he waited at a stop sign, Simpson saw Petitioner and Rankin "tussling." Rankin was crying and asked Simpson to drive her home, but Petitioner insisted that there was no problem. Simpson decided not to intervene and drove away. Later that week, Simpson saw Petitioner in a liquor store and Petitioner refused to speak to him. Simpson did not relate his encounter with Rankin and Petitioner to the police until they questioned him in December 1999, but he had already told others in the community what he observed that night.

Petitioner did not testify at trial, but a tape was played into evidence in which Petitioner was interviewed by Sergeant Gary Hobbs of the Mansfield Police Department and Lieutenant Robert Davidson of the DeSoto Parish Sheriff's Office. In that tape, Petitioner admitted that he was on the wooded trail with Rankin on the night of April 5, 1999, though he denied killing her. He claimed that he smoked crack cocaine with Rankin that night in his sister's house in the projects. Then, at approximately 5:00 a.m., he left his sister's house with Rankin and bought more crack cocaine. He went to the trail with Rankin and gave her some crack cocaine to smoke in exchange for sex. She smoked the crack cocaine, and then, as Petitioner pulled down his pants, Rankin tried to steal his billfold. He slapped her in the face with an open hand, retrieved his billfold, and ran away as Rankin followed him down the trail. Petitioner insisted that Rankin was alive when he left the trail and that he did not see Simpson at all that night. Petitioner also claimed that he moved to Virginia for a job two weeks after Rankin's funeral.

Petitioner offered two possible explanations for Rankin's death. First, he asserted that she could have tripped over a tree stump and fallen face-down on the wet trail. Second, she may have been killed by a man from whom she had stolen some money earlier in the night. Petitioner did not provide any support for these theories other than the assertion that they were possible.

Bertha Jewitt, Petitioner's girlfriend, testified that Petitioner came to her house on the morning of April 6, 1999. She stated that at 9:30 a.m., over 24 hours before Rankin's body

was discovered, Petitioner told her that Rankin was dead. This testimony contradicts her earlier statement to the police that she did not learn of Rankin's death until a friend called and told her about it.

Dr. Steven Cogswell, who performed the autopsy, testified that the scrapes and bruises on Rankin's body were caused by being dragged face-down on the ground. He also testified that the dirt and small stones that were found in her lungs indicate that she was alive while her head was held underwater and that she was forcibly drowned. He further stated that the injuries to Rankin's neck were consistent with manual strangulation. Cogswell also testified that the degree of injury to Rankin's anus indicated that non-consensual anal penetration occurred, though no semen was detected. Cogswell also noted that Rankin sustained other blunt force injuries, including a broken jaw. He concluded that Rankin's death was caused by strangulation and drowning shortly after she sustained the other injuries. In his opinion, Rankin's death was not caused by the cocaine and alcohol that were in her system.

Finally, Petitioner offered the testimony of his medical expert, Dr. Gerald Liuzza. Liuzza agreed that drowning and blunt force injuries could have been the cause of Rankin's death, but he could not exclude other possibilities. He stated that the high levels of cocaine and alcohol in Rankin's blood could have caused her death rather than the injuries she sustained. Liuzza admitted that Cogswell was in a better position to evaluate Rankin's injuries since Cogswell performed the autopsy, but Liuzza claimed that he could still competently interpret the facts that Cogswell gathered.

The district judge found Petitioner guilty of manslaughter. Petitioner was convicted of manslaughter rather than murder because the judge could not foreclose the possibility that Rankin drowned while unconscious after her violent confrontation with Petitioner. Nevertheless, the district judge was convinced beyond a reasonable doubt that Rankin died as a result of Petitioner's actions and found Petitioner's explanation of events implausible.

The State appellate court reversed the conviction largely for two reasons. First, in light of the circumstantial nature of the evidence against Petitioner, the court was troubled by discrepancies in the time frame of the events that allegedly occurred. Specifically, Simpson claimed to have seen Petitioner and Rankin "tussling" at approximately 11:00 p.m., while Hewitt Anderson stated that Rankin left his house at approximately midnight to 12:30 a.m. after having sex with his brother Harold. This led the court to conclude that Petitioner was not necessarily the last person to see Rankin alive. Second, the court decided that Bertha Jewitt's earlier statement to police that she learned about the murder from a friend over the telephone negated her testimony at trial that Petitioner told her one day before the body was found that Rankin was dead.

The Supreme Court of Louisiana reversed the State appellate court's decision and reinstated the conviction. It is that decision that is presently under review.

**Standard of Review**

In evaluating the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The Supreme Court of Louisiana invoked, recited, and applied the Jackson standard on Petitioner's direct appeal. Thus, its decision was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the "unreasonable application" clause, a federal court is permitted to grant the writ if the State court has identified the correct governing legal principle from the United States Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, supra at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the State court was incorrect in its application of a federal constitutional principle, this alone does not alone permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). It is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

**Analysis**

The Supreme Court's analysis indicated that the trial court's determination of Petitioner's guilt was reasonable. It is not the place of this court to determine whether that analysis was correct. Rather, this court must determine whether that analysis was reasonable.

First, the Supreme Court noted Petitioner's admission that he slapped Rankin. The Court then made a number of observations regarding the alleged time discrepancies in the testimony of the State's witnesses. The Court noted that several witnesses were intoxicated on the night in question and that they only made rough approximations as to time. In fact, Officer Gary Hobbs, who investigated Rankin's death, testified that all of the times that were established in this case were only approximations. (Trial Transcript, Record Vol. 1, p. 164). Additionally, Simpson's time frame may have been off because he did not give his account to authorities until nine months after Rankin's death, but the substance of his testimony is still credible because Petitioner admitted fighting with Rankin on the trail that night. And in any case, Petitioner admitted that he had a violent altercation with Rankin at some point after 5:00 a.m., hours after anyone else saw her alive. It is reasonable to conclude that these arguments overcome any concern about time discrepancies.

The Supreme Court of Louisiana also deferred to the district judge's opinion that Dr. Cogswell and Bertha Jewitt offered credible testimony. Dr. Cogswell testified that Rankin was murdered, and Jewitt indicated that Petitioner had guilty knowledge of Rankin's death

before her body was discovered. If these witnesses were credible, then it was rational to conclude that there was no reasonable doubt as to Petitioner's guilt. Such credibility determinations are squarely within the province of the trier of fact. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995). "A determination of a factual issue made by a State court shall be presumed correct" in a claim for federal habeas relief, and Petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005), quoting 28 U.S.C. § 2254(e)(1). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Id.

The district judge rationally determined that Cogswell and Jewitt were credible witnesses, and there is no clear and convincing evidence to the contrary. Dr. Cogswell actually performed the autopsy on Rankin's body, so it was reasonable to accept his expert opinion over that of Dr. Liuzza. As for Bertha Jewitt, the district judge could have reasonably concluded that she was hiding her boyfriend's guilty knowledge when she first spoke with the police but that she told the truth when she later took the stand. The district judge was present in the courtroom with these witnesses and was in the best position to determine their credibility.

The Supreme Court also made a number of other observations about the evidence that suggest Petitioner's guilt. First, except for his own self-serving testimony, Petitioner

provided no support for his theory that Rankin was killed by another man from whom she stole money earlier that night. Second, the Court found it noteworthy that the motive for murder under Petitioner's theory would apply equally to Petitioner himself, as Rankin had also stolen money from him. Additionally, the Court found it highly improbable that Rankin would have chased Petitioner down the trail, as Petitioner claims, when it was Petitioner who had allegedly caught Rankin stealing his money. Moreover, Simpson testified that he observed Rankin trying to escape from Petitioner, not the other way around. The Court was also influenced by Simpson's testimony that Rankin was crying and begging him to take her away from Petitioner. Finally, the Court noted that Petitioner moved to Virginia shortly after Rankin's funeral, a fact that tends to indicate that Petitioner was conscious of guilt.

All of these observations by the Supreme Court are reasonable. The Supreme Court of Louisiana reasonably reversed the appellate court's decision and affirmed the rationality of the district judge's decision that Petitioner is guilty of manslaughter beyond a reasonable doubt.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996)(en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 14th day of August, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE